UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MICHAEL ARROYO,                                    **MEMORANDUM & ORDER**
                                                   07 CV 4275 (RJD) (LB)
                    Plaintiff,

        -against-

NEW YORK DOWNTOWN HOSPITAL,

                    Defendant.
------------------------------------------------------------X

DEARIE, Chief Judge.

Pro se plaintiff Michael Arroyo, an Hispanic male and a former Junior Systems Analyst in the IT Department of defendant New York Downtown Hospital ("Downtown"), alleges that Downtown discriminated against him, subjected him to a hostile work environment, and retaliated against him in violation of Title VII of the Civil Rights Act of 1964. Downtown moves for summary judgment seeking dismissal of Arroyo's complaint in its entirety. For the reasons that follow, the motion is granted.

## BACKGROUND

As part of its summary judgment papers, Downtown sent Arroyo a "Notice to Pro Se Litigant Who Opposes a Motion For Summary Judgment," which informed Arroyo that "THE CLAIMS YOU ASSERT IN YOUR COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THIS MOTION by filing sworn affidavits and other papers as required by Rule 56(e) of the Federal Rules of Civil Procedure and by Local Rule 56.1." The notice further warned Arroyo that: "If you do not respond to the motion for summary judgment on time with affidavits or documentary evidence contradicting the material

facts asserted by the defendant, the court may accept defendant's factual assertions as true. Judgment may then be entered in defendant's favor without trial."

The Court's scheduling order gave Arroyo until December 11, 2009, to respond to Downtown's motion. (DE 64.) Consistent with his practice during the course of these proceedings of not complying with this Court's orders -- Magistrate Judge Bloom, for example, recommended in November 2008 that Arroyo's action be dismissed because of his willful failure to attend two court conferences -- Arroyo has not responded to Downtown's motion. In fact, the Court has not heard from Arroyo for more than 13 months. It is a waste of the defendant's and this Court's resources when a plaintiff does not take seriously the lawsuit that he initiated and given Arroyo's persistent cavalier attitude the Court has contemplated dismissing his action sua sponte for lack of prosecution.

Nonetheless, because dismissal for lack of prosecution is "a harsh remedy to be utilized only in extreme situations," see Dove v. City of New York, 2006 WL 3802267, at *2 (S.D.N.Y. Dec. 26, 2006) (quoting Harding v. Federal Reserve Bank of New York, 707 F.2d 46, 50 (2d Cir. 1983)), the Court reaches the merits of Downtown's motion. Construing Arroyo's pro se allegations as broadly as possible to raise the strongest possible claims, Bligen v. Griffen, 2007 WL 430427, at *2 (S.D.N.Y. Feb. 8, 2007) (citing Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)), the Court identifies several claims under Title VII. First, Kathleen Parker, Arroyo's boss and Downtown's Chief Information Officer, discriminated against him on account of his race and/or national origin when she: (1) gave him a smaller bonus in 2005 than what he deserved because she judged his performance more strictly than his co-workers; (2) paid Downtown's "other systems analysts" "about double [his] salary"; (3) denied him two promotions; and (4) "ignored his vacation requests." Second, Parker, in retaliation for Arroyo criticizing her

management of a large-scale IT Department project in a September 22, 2006 email, gave him a negative performance review on October 16, 2006, and ultimately terminated him on November 30, 2006. Last, Parker's and a co-worker's verbal harassment created a hostile work environment.

## DISCUSSION

I. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). On a motion for summary judgment, a court "must first resolve all ambiguities and draw all inferences in favor of the non-moving party." Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000) (quoting Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991)). "[S]ummary judgment is mandated 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Winnie v. City of Buffalo Police Department, 2003 WL 251951, at *3 n.11 (W.D.N.Y. Jan. 13, 2003) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

Because Arroyo has not responded to Downtown's motion, the Court has carefully analyzed Downtown's submissions and accepts the facts recited in Downtown's Rule 56.1 Statement, the affidavit of Kathleen Parker ("Parker Aff."), and accompanying exhibits as true where they are supported by the evidence. See Wilson v. Pessah, 2007 WL 757993, at *2 n.3 (E.D.N.Y. Mar. 8, 2007) (citing Pierre-Antoine v. City of New York, 2006 WL 1292076, at *3

3

(S.D.N.Y. May 9, 2006); Gilliam v. Trustees of Sheet Metal Workers' Nat'l Pension Fund, Plan A, 2005 WL 1026330, at *1 n.2 (S.D.N.Y. May 3, 2005). Based on its review of the record, the Court is satisfied that there is no genuine issue of material fact that warrants sending this case to a jury and that Downtown is entitled to judgment as a matter of law.

II.    Title VII Discrimination Claims

Title VII of the Civil Rights Act of 1964 "forbids employment discrimination on the basis of 'race, color, religion, sex, or national origin.'" Clemente v. New York State Div. of Parole, 684 F. Supp. 2d 366, 372 (S.D.N.Y. 2010) (quoting Richardson v. Comm'n on Human Rights and Opportunities, 532 F.3d 114, 119 (2d Cir. 2008) (quoting 42 U.S.C. § 2000e-2(a)(1)). Under the first step of the familiar McDonnell-Douglass burden-shifting summary judgment standard for Title VII claims, plaintiff bears the prima facie burden of establishing: "1) that he belonged to a protected class; 2) that he was qualified for the position he held; 3) that he suffered an adverse employment action; and 4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination." Fleming v. MaxMara USA, Inc., 644 F. Supp. 2d 247, 261 (E.D.N.Y. 2009) (citing Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004)). Although plaintiff's burden at the prima facie stage is minimal, he must provide some competent evidence that would be sufficient to permit a rational finder of fact to infer a discriminatory motive. See Patrick v. New York City Transit Authority, 2007 WL 2071555, at *11 (E.D.N.Y. July 16, 2007) (citing Cronin v. Aetna Life Ins., 46 F.3d 196, 204 (2d Cir. 1995)). If he establishes a prima facie case, "[t]he burden then shifts to the employer who must provide a legitimate, nondiscriminatory business rationale to justify its conduct." Clemente, 684 F. Supp. 2d at 374 (citing Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981)). "If the employer provides such a rationale, the presumption created by the prima facie

4

case 'drops out,'" id. (quoting Roge v. NYP Holdings, Inc., 257 F.3d 164 (2d Cir. 2001)), and the "plaintiff must then present admissible evidence of 'circumstances that would be sufficient to permit a rational trier of fact to infer that the [employer's] decision was more likely than not based in whole or in part on discrimination,'" id. (quoting Terry v. Ashcroft, 336 F.3d 128, 139 (2d Cir. 2003)).

*A.  October 2005 Bonus Claim*

Arroyo's claim that Parker discriminated against him when she gave him a smaller bonus in October 2005 than he deserved is time-barred. The filing of a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") is a prerequisite to filing a Title VII complaint in federal court. See 42 U.S.C. § 2000e-5(b). In New York, a plaintiff must file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory conduct. See Mudholkar v. University of Rochester, 261 Fed. Appx. 320, at *2 (2d Cir. Jan. 25, 2008). The 300 day period serves as a statute of limitations, and claims regarding acts that occurred more than 300 days prior to the employee's initiation of administrative review are time-barred. Id. Because Arroyo filed his charge with the EEOC on April 3, 2007 (Comp. ¶10), claims of discrimination that are predicated on conduct that occurred before June 8, 2006 are time-barred. Accordingly, Arroyo's claim of discrimination that is predicated on the amount of his October 2005 bonus is dismissed. See e.g., Griffin v. New York City Off-Track Betting Corp., 2002 WL 252758, at *3 (S.D.N.Y. Feb. 20, 2002) (dismissing as untimely employee's discrimination claim where employer's failure to give bonus occurred outside 300-day period).

*B.  Salary Discrimination Claim*

Arroyo's claim that Parker discriminated against him by paying Downtown's "other systems analysts" "about double [his] salary" is also dismissed. To establish a claim of

5

discrimination in compensation, Arroyo must show: (1) that he is a member of a protected class; (2) that he was paid less than similarly situated non-members of his protected class for work requiring substantially the same responsibility; and (3) evidence of discriminatory animus. See Belfi v. Prendergast, 191 F.3d 129, 139 (2d Cir. 1999). Downtown concedes that Arroyo is a member of a protected class but argues that Arroyo has not met his prima facie burden of showing that he was paid less than employees who had the same employment characteristics as he.

"[W]here a plaintiff seeks to make out a case of discrimination 'by pointing to the disparate treatment of a purportedly similarly situated employee, the plaintiff must show that []he shared sufficient employment characteristics with that comparator so that they could be considered similarly situated.'" Russell v. County of Nassau, 696 F. Supp. 2d 213, 233-35 (E.D.N.Y. 2010) (quoting Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 64 (2d Cir. 1997)). Although Arroyo seeks to compare his salary to that of the "other systems analysts" at Downtown, the record indicates that he was not a systems analyst; rather, he was the only Junior Systems Analyst at Downtown. (Arroyo Dep. Tr. at 153.) As his title suggests, Arroyo had less experience and fewer responsibilities than individuals holding the systems analyst position. (Parker Aff. ¶¶ 14-18; Exs. 1 and 2 to the Parker Aff.) Because Arroyo has not met his prima facie burden of demonstrating that he was "similarly situated" to the "other systems analysts" at Downtown, his claim of salary discrimination is dismissed.

    *C.    Failure-to-Promote Claims*

Arroyo's claims that Parker discriminated against him in 2005 when she did not promote him to the Manager of Operations position in 2005 and then again in May 2006 when she did not

promote him to the IT Financial Analyst position,[1] instead giving the positions to "Caucasian employees with lesser qualifications" also fail. To meet his prima facie burden on his failure-to-promote claims, Arroyo must demonstrate that: (1) he is a member of a protected class; (2) he applied and was qualified for the positions he sought; (3) he suffered an adverse employment action; and (4) the circumstances surrounding that action permit an inference of discrimination. See Bush v. Fordham University, 452 F. Supp. 2d 394, 407 (S.D.N.Y. 2006) (citing Williams v. R.H. Donnelley Corp., 368 F.3d 123, 126 (2d Cir. 2004)).

As an initial matter, the Court does not agree with Downtown that Arroyo's failure-to-promote claims must be dismissed because Arroyo did not submit a formal application or resume as other applicants purportedly did. While a "specific application for a promotion is generally required," Howe v. Town of Hempstead, 2006 WL 3095819, at *7 (E.D.N.Y. Oct. 30, 2006) (citing Petrosino v. Bell Atlantic, 385 F.3d 210, 226 (2d Cir. 2004)), "the rule is not inflexible," id. Arroyo testified -- and Downtown does not dispute -- that he sent emails to Parker expressing his interest in the positions and that he had follow-up conversations with Parker about them. Because a jury could find that by doing so Arroyo applied for the positions, the Court does not grant summary judgment to Downtown on Arroyo's failure-to-promote claims on this ground.

Nor does the Court agree with Downtown that Arroyo's failure-to-promote claims must be dismissed on statute of limitations grounds. While the record indicates that Arroyo expressed his interest in the positions more than 300 hundred days before he filed his EEOC charge on April 3, 2007, Downtown, which bears the burden of establishing that Arroyo's claims are time-

---

[1] Arroyo initially claimed that he applied for and was denied promotion to the Systems Analyst position. He admitted at his deposition, however, that he was not sure if he applied for the Systems Analyst position or the IT Financial Analyst position (Arroyo Dep. Tr. at 149-50) but he confirmed that he had sought promotion to the position that was vacated by Ed Healy and eventually filled by Tom Weingarten. (Id. at 133,150.) That position was the IT Financial Analyst position. (Parker Aff. ¶ 37.)

7

barred, see e.g., Thomas v. Metropolitan Dist. Com'n, 2004 WL 1402290, at *2 (D. Conn. June 1, 2004) (citing Overall v. Estate of Klotz, 52 F.3d 398, 403 (2d Cir. 1995)), has not come forward with any evidence showing when Arroyo became aware or had reason to know that he was not promoted. Because the statute of limitations does not begin to run until an employee knows or has reason to know that he was not promoted, summary judgment for Downtown on Arroyo's failure-to-promote claims cannot be granted on this ground. Accord Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999) (statute of limitations accrued "when Harris knew or had reason to know of the injury serving as the basis for his claim. . . . Accordingly we must determine when Harris knew or should have known that he had been passed over for promotion to sergeant") (citing Cornwell v. Robinson, 23 F.3d 694, 703 (2d Cir. 1994)).

In any event, Arroyo's failure-to-promote claims are dismissed because he has not met his prima facie burden of establishing that he was qualified for either position. The Second Circuit has held that in determining whether a plaintiff has met his prima facie burden of demonstrating that he was qualified for the position, "being 'qualified' refers to the criteria the employer has specified for the position," and a plaintiff's subjective belief that he was qualified will not suffice. Williams v. R. H. Donnelley Corp., 368 F.3d 123, 127 (2d Cir. 2004) (quoting Thornley v. Penton Publ'g, Inc., 104 F.3d 26, 29 (2d Cir. 1997)). Arroyo concedes that he knew some but not all of the educational and experience requirements for the positions. (Arroyo Dep. Tr. at 141.) Downtown specified that applicants for the Manager of Operations position have "10+ years of progressive operations or an equivalent combination of education/work experience" (Ex. L.) and Arroyo concedes that he had only between five and seven years of operational experience when he applied. (Arroyo Dep. Tr. at 145.) As for the IT Financial Analyst position, Downstate required that applicants have "ten years plus of progressive

8

financial systems support or an equivalent combination of education/work experience, "college degree in accounting or related discipline," and "strong financial background with ten plus years of financial management." (Ex. M; Arroyo Dep. Tr. at 152.) Arroyo does not have an accounting degree and when he applied for the position he did not have ten plus years of financial management experience. (Arroyo Dep. Tr. at 150-51.) Arroyo's failure to establish that he was qualified for the positions is fatal to his claims. See e.g., Breland-Starling v. Disney Pub. Worldwide, 166 F. Supp. 2d 820, 824 (S.D.N.Y. 2001) (citing Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000)).

Even if Arroyo were qualified for the positions, no reasonable juror could conclude that Parker's decisions not to promote him were racially motivated. Parker created the Junior Systems Analyst position in 2004 specifically for Arroyo when his position in another department was downsized as part of Downtown's reduction in force. Parker also gave him a $5,000 raise. Under the "same actor" doctrine, "when the person who makes the decision to fire [or not promote] was the same person who made the decision to hire, it is difficult to impute to [her] an invidious motivation that would be inconsistent with the decision to hire." Hyek v. Field Support Services, Inc., --- F. Supp. 2d ----, 2010 WL 1222845, at *16 (E.D.N.Y. 2010) (citing Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997)).

Further, while the fact that Tom Weingarten and Vincent Feola, the two individuals who Parker hired for the positions, are Caucasian may give rise to a prima facie inference of discrimination, see Wolde-Meskel v. Argus Community, Inc., 2001 WL 883648, at *7 (S.D.N.Y. Aug. 7, 2001) (citing Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000)), Downtown has rebutted any inference of discrimination by coming forward with evidence that Weingarten and Feola were significantly more qualified than Arroyo in both education and

9

experience. (Parker Aff. ¶¶ 33, 38.) Indeed, even Arroyo admits that Weingarten and Feola may have been more qualified than he. (Arroyo Dep. Tr. at 134, 143.) As the Second Circuit has held, a plaintiff's "qualifications would have to be 'so superior' to those [of the individuals who received the promotion] for a reasonable jury to determine that discrimination was the motivating factor in the decision." Moreno v. Town of Huntington, 2008 WL 746830, at *6 (E.D.N.Y. Mar. 18, 2008) (citing Byrnie v. Town of Cromwell Bd. of Educ., 243 F.3d 93, 103 (2d Cir. 2001)). Based on this record, no reasonable juror could conclude that Arroyo's qualifications were so superior to Weingarten's or Feola's that discrimination must have been the motivating factor in Parker's decision not to promote him. Accordingly, Arroyo's failure-to-promote claims are dismissed.

### D. *Vacation Request Claim*

Arroyo's claim that Parker discriminated against him when she "ignored his vacation requests" is wholly meritless. As an initial matter, the record indicates that Parker did not "ignore" Arroyo's vacation requests; indeed, Arroyo admits -- and documentation confirms -- that Parker approved a number of Arroyo's vacation requests (Exs. O, P, S, T, U.), and he further admits that it was possible that Parker approved more vacation time for him than she did for other employees. (Arroyo Dep. Tr. at 163.) Moreover, while Parker did deny Arroyo's one-time request to take a month-long vacation from June 28, 2006 to July 28, 2006 -- explaining to him that it was simply not "operationally feasible" for him to be out of the office for that length of time -- she still allowed Arroyo to take off from June 28 to July 16, a nearly three-week period. (Parker Aff. ¶¶ 28-30; Ex. R.) Parker's "denial" of Arroyo's vacation request under these circumstances is not a material adverse action. See e.g., Roff v. Low Surgical & Medical Supply, Inc., 2004 WL 5544995, at *4 (E.D.N.Y. May 11, 2004) ("[T]he denial of a single

vacation request, without any indication that there was an absolute prohibition against plaintiff taking any vacation time, is not a material adverse employment action.") (citing Hunter v. St. Francis Hosp., 281 F. Supp. 2d 534, 544 (E.D.N.Y. 2003)).

Even if the "denial" of Arroyo's one-time vacation request were a material adverse action, Arroyo has failed to come forward with any evidence that the denial occurred under circumstances giving rise to an inference of discrimination. Indeed, Arroyo -- who provides no reason why he needed to take a month-long vacation -- concedes that with the exception of one individual at Downtown who was given a month off for medical reasons, he knows of no other Downtown employee who Parker allowed to take a month off. (Arroyo Dep. Tr. at 173-74.) Accordingly, this claim is dismissed.

III. Hostile Work Environment Claim

Title VII also prohibits a work environment that is "so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [the plaintiff's] employment were thereby altered." Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002) (internal citations omitted). To establish a cognizable claim of hostile work environment, the plaintiff must "show that the complained of conduct: (1) 'is objectively severe or pervasive-that is, creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's [race].'" Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (ellipses in original omitted) (quoting Gregory v. Daly, 243 F.3d 687, 691-92 (2d Cir. 2001)). Relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

11

unreasonably interferes with an employee's work performance." Id. (quoting Harris, 510 U.S. at 23).

Arroyo points to four comments made by Parker and one made by a co-worker over a two-year period as evidence of a hostile work environment. Four of the five comments that Arroyo complains about, namely Parker's comments that Arroyo was "shit-stirring," "not part of the program," and "there is a gun to your head," and a co-worker's comment that Arroyo get regular haircuts are facially race neutral. Indeed, Arroyo admits that he did not know if the remarks were motivated by his race or national origin. (Arroyo Dep. Tr. at 181-82, 187, 191, 193, 195.) Accordingly, these comments cannot form the basis of a hostile work environment claim. See Thomas v. New York City Health and Hospitals Corp., 2004 WL 1962074, at *12 (S.D.N.Y. Sept. 2, 2004) ("The Second Circuit has unambiguously stated that only conduct prompted by plaintiff's race contributes to a hostile work environment claim") (citing Richardson v. New York State Dept. of Corr. Serv., 180 F.3d 426, 440 (2d Cir. 1999)).

Downtown concedes that the fifth comment, Parker's purported one-time remark to Arroyo that "your foreign kind does not belong here," is not a facially neutral remark.[2] Nevertheless, "[f]or racist comments, slurs, and jokes to constitute a hostile work environment . . . there must be a steady barrage of opprobrious racial comments." Id. at *13 (quoting Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997)). Although there is no "threshold 'magic number' of harassing incidents" that give rise to a hostile work environment claim, id. at *12 (quoting Richardson, 180 F.3d at 439), "[a]s a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive," id. at *11 (quoting Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003) (quoting Alfano v.

---

[2] The Court notes that Parker denies making the remark. Resolving all inferences in favor of Arroyo on this motion, the Court assumes that the remark was made.

12

Costello, 294 F.3d 365, 374 (2d Cir. 2002)). One remark made over the course of two years does not establish a pervasive hostile work environment. Indeed, even assuming that all of the remarks that Arroyo complains of smack of racial animus, five remarks over a two-year period that "insulted" Arroyo (Arroyo Dep. Tr. at 182, 193) would be insufficient as a matter of law to establish a hostile work environment claim. Id. (citing Pagan v. New York State Div. of Parole, 2003 WL 22723013, at *6 (S.D.N.Y. Nov. 18, 2003) (four instances of racially derogatory remarks by supervisor over several months did not amount to a hostile work environment); Stembridge v. City of New York, 88 F. Supp. 2d 276, 286 (S.D.N.Y. 2000) (seven incidents over three years did not amount to a hostile work environment); Carter v. Cornell Univ., 976 F. Supp. 224, 232 (S.D.N.Y. 1997) (six race-related comments over three years do not create a hostile work environment); Williams v. Port Auth. of N.Y. & N.J., 880 F. Supp. 980, 991-92 (S.D.N.Y. 1995) (five racial slurs over two years did not establish a hostile work environment).

IV.     Retaliation Claim

Title VII also "forbids an employer to retaliate against an employee for, inter alia, complaining of employment discrimination prohibited by Title VII." Ventimiglia v. Hustedt Chevrolet, 2009 WL 803477, at *13 (E.D.N.Y. Mar. 25, 2009) (quoting Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 205 (2d Cir. 2006) (citing 42 U.S.C. § 2000e-3(a)). To establish a cognizable retaliation claim under Title VII, the plaintiff bears the burden of demonstrating that: "(1) []he engaged in a protected activity, (2) defendants knew about the activity, (3) defendants took an adverse employment action against [him], and (4) a causal connection exists between the protected activity and the adverse action." Vinson v. New York City Dept. of Corrections, 2006 WL 140553, at *6 (E.D.N.Y. Jan. 17, 2006) (citing Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 234 (2d Cir. 2000)).

Arroyo's claim that Parker, in retaliation for sending her a September 22, 2006 email in which he criticized her management of the IT Department's large-scale project, gave him a negative performance review on October 16, 2006 for the October 2005 to October 2006 performance period and then terminated him on November 30, 2006, fails because Arroyo has not demonstrated that his sending of the email constitutes a "protected activity." "Protected activities under Title VII fall into two categories: opposition and participation." Barlow v. Connecticut, 319 F. Supp. 2d 250, 261 (D. Conn. 2004). "An employee engages in a protected activity when []he has (1) 'opposed any practice made an unlawful employment practice' by Title VII, or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." Id. (citing 42 U.S.C.§ 2000e-3(a)). The Court has reviewed Arroyo's September 22 email to Parker (Ex. W.) and it does not contain a single allegation by Arroyo that Parker -- or anyone else at Downtown for that matter -- discriminated against him or otherwise treated him poorly or unfairly because of his race or national origin. Rather, the email is nothing more than a disgruntled employee's attack on his supervisor, an "I can do this job better than you" rant. See e.g., Kramer v. HSH Nordbank AG, 680 F. Supp. 2d 502, 521-22 (S.D.N.Y. 2010) (employee's letter to human resources department was not a protected activity where it did not complain of gender-based discrimination).

Even if Arroyo's September 22 email to Parker were a protected activity, Arroyo's claim would still fail. While Arroyo's negative performance review and termination may have occurred close enough in time to his September 22 email to give rise to a prima facie inference of retaliation, Downtown has rebutted the inference by coming forward with concrete evidence showing that Arroyo was terminated because his performance was "below standards" and his attendance and attitude were poor. (See Parker Aff. ¶ 39-63; Ex. E.) Because Arroyo has not

come forward with any evidence to demonstrate that these legitimate, non-discriminatory reasons were mere pretexts, his retaliation claim is dismissed. See El Sayed v. Hilton Hotels Corp., 2009 WL 5064354, at *9 (S.D.N.Y. Dec. 16, 2009) ("While timing may be sufficient to establish an inference of discrimination, 'the close proximity of a termination to the plaintiff's [protected activity] alone is insufficient to demonstrate a pretext.'") (quoting Forde v. Beth Israel Medical Center, 546 F. Supp. 2d 142, 152 (S.D.N.Y. 2008).

## CONCLUSION

For the foregoing reasons, Downtown's motion for summary judgment is granted with respect to each of Arroyo's claims. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
      September 27, 2010

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge